## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WORLDWIDE DIRECT, INC., | ) | |
| et al., | ) | Case No. 99-00108(MFW) |
| Debtors. | ) | through No. 99-00127(MFW) |
| _____ | ) | (Jointly Administered) |
| | ) | |
| ROBERT H. LORSCH, RICHARD M. | ) | |
| TEICH and AHMED O. ALFI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-52841 |
| | ) | |
| GOLDIN ASSOCIATES, L.L.C. in | ) | |
| its capacity as Liquidating | ) | |
| Trustee of the WORLDWIDE | ) | |
| DIRECT LIQUIDATION TRUST, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION[1]

Before the Court is the Motion for Summary Judgment filed by
Goldin Associates, L.L.C. (the "Liquidating Trustee") on the
Complaint filed against it by Robert H. Lorsch, Richard M. Teich,
and Ahmed O. Alfi (collectively, the "D&O Plaintiffs"). After
considering the arguments of both parties and for the reasons set
forth below, the Court will grant the Liquidating Trustee's
Motion.

_____

[1]   This Memorandum Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.    <u>BACKGROUND</u>

SMTK Expedite, Inc., formerly known as SmarTalk Teleservices, Inc., ("SmarTalk"[2]) was a publicly traded telecommunications corporation.  Prior to its bankruptcy filing, SmarTalk issued several press releases announcing that it had misstated the company's financial results for Q3 1997 through Q2 1998 and would have to restate them.  These announcements led to a number of securities fraud class action lawsuits filed by Smartalk securities holders against the company's directors and officers, including the D&O Plaintiffs (the "Securities Class Actions").  On December 13, 1999, the Securities Class Actions were consolidated into the District Court for the Southern District of Ohio as part of a multidistrict litigation" (the "MDL").  (Ex. B-10.)[3]  Securities class action suits were also filed against PricewaterhouseCoopers ("PwC").  PwC's motion to dismiss those suits was granted on April 24, 2001.  PwC and the

---

[2]    SmarTalk acquired the outstanding shares of Worldwide Direct, Inc. ("Worldwide"), a prepaid cellular communications company, in 1998 and is one of the debtors represented in the Worldwide Direct Liquidation Trust.

[3]    References to the record are as follows: "Ex. A-" refers to the exhibits attached to the Declaration of Phil C. Appenzeller, Jr., in Support of the Liquidating Trustee's Motion for Summary Judgment; "Ex. B-" refers to the exhibits attached to the Declaration of Robert M. Yaspan in Support of the Response to Objection of the Liquidating Trustee to Certain Indemnification Claims Asserted by Certain Former Officers and Directors.

Securities Class Action Plaintiffs eventually reached a
settlement that was approved on May 10, 2002.[4]

On January 19, 1999, Smartalk and several of its affiliates
(collectively the "Debtors") filed voluntary petitions for relief
under chapter 11 of the Bankruptcy Code.  An Official Committee
of Unsecured Creditors (the "Creditors' Committee") was appointed
in the bankruptcy cases.  On November 14, 2000, the Creditors'
Committee sued PwC in Texas (the "PwC Litigation").  (Ex. A-2.)
That suit was transferred to the MDL on April 25, 2001.  The
Liquidating Trustee was later substituted for the Creditors'
Committee as plaintiff in the PwC Litigation.  The Liquidating
Trustee also assumed control of certain derivative suits that had
been instituted by shareholders against, inter alia, the D&O
Plaintiffs.  In addition, the Liquidating Trustee filed a suit
against Donaldson, Lufkin & Jenrette Securities Corporation (the
"DLJ Litigation").  (Ex. A-5.)  The DLJ Litigation was originally
filed in the Central District of California before being
transferred to the Southern District of New York on November 14,
2000.

From 2001-2004, the Securities Class Actions and the
Liquidating Trustee's suits against the D&O Plaintiffs, PwC and

---

[4]    The MDL also involved several additional suits that did not
involve the D&O Plaintiffs or the Liquidating Trustee and are not
relevant to this case.  (Ex. B-10.)

DLJ continued simultaneously.  On March 1, 2002, the Liquidating Trustee, the D&O Plaintiffs and the Insurance Carriers who had provided D&O insurance to the Debtors entered into a settlement (the "Settlement Agreement").  (Ex. A-1.)  Pursuant to the Settlement Agreement, the Insurance Carriers paid $10,250,000 to the Liquidating Trust on behalf of the D&O Plaintiffs and the parties issued mutual releases, subject to an obligation of the Liquidating Trustee contained in Paragraph 12, to indemnify the D&O Plaintiffs for certain claims.  (Id. at ¶¶ 1-7, 12.)  The Insurance Carriers waived any subrogation claims against the D&O Plaintiffs but preserved the right to recover certain defense costs they had paid on behalf of the D&O Plaintiffs.  (Id. at ¶ 2.)

On February 25, 2004, the Securities Class Action Plaintiffs settled numerous claims with directors and officers, including the D&O Plaintiffs, pursuant to which the Insurance Carriers funded the $11.1 million settlement subject to a reservation of rights against the directors and officers.  (Ex. B-7.)  Two of the D&O Plaintiffs entered into a side agreement with one of the Insurance Carriers, Genesis Insurance Company ("Genesis"), regarding repayment of certain defense costs.  (Ex. B-8.)

On January 29, 2008, the Liquidating Trustee entered into a settlement with PwC, which was approved by the Court on March 25,

2008.  (Exs. A-3 & A-4.)  Under the terms of that settlement, PwC released and agreed not to bring any claims against the D&O Plaintiffs or the Insurance Carriers.  (Ex. A-3 at ¶ 6.)  PwC never named the D&O Plaintiffs as defendants in any action related to the Debtors before or after settling with the Liquidating Trustee.  (Ex. A-2.)

On September 10, 2004, the Court approved a settlement between the Liquidating Trustee and DLJ's successor in interest. (Ex. A-6.)  As part of the settlement, all potential claims DLJ might have had against the D&O Plaintiffs related to the DLJ Litigation were released.  (Ex. A-7 at ¶ 5.)  DLJ never named the D&O Plaintiffs as defendants in any action relating to the Debtors.  (Ex. A-5.)

In April 2005, the D&O Plaintiffs were sued by Genesis for reimbursement of certain defense costs it had paid for them in the MDL and in an SEC investigation of the Debtors, asserting that they were not covered claims under the policies.  (Ex. B-9.) The D&O Plaintiffs settled that litigation by agreeing to reimburse Genesis for certain of those payments.

On December 4, 2009, the D&O Plaintiffs filed a Complaint against the Liquidating Trustee for declaratory relief to determine their interests in the Worldwide Direct Liquidation Trust (the "Complaint").  The Complaint requests a declaration

that the D&O Plaintiffs are entitled to reimbursement from the Liquidating Trust or from the trust created in Paragraph 12 of the Settlement Agreement for costs incurred by them (and repaid to Genesis) in defense of the Securities Class Actions and the SEC investigation.  The D&O Plaintiffs argue that the Settlement Agreement created a common law express trust to be used for indemnification of those claims.

On April 1, 2010, the Liquidating Trustee filed a motion for summary judgment contending that, as a matter of law, no trust was created by the Settlement Agreement and the D&O Plaintiffs have no valid claims under the plain language of the Settlement Agreement.  The Liquidating Trustee additionally requested attorneys' fees and costs related to defending the Complaint. The Motion has been fully briefed and is ripe for decision.


II.   JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (B) & (O).


III. DISCUSSION

A.   Standards for Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled

6

to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
Initially, the movant must demonstrate the absence of a genuine
issue of material fact. <u>Huang v. BP Amoco Corp.</u>, 271 F.3d 560,
564 (3d Cir. 2001).

If the movant successfully demonstrates that such an absence
exists, the burden shifts to the non-movant to establish the
existence of a triable issue. <u>Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The non-movant
cannot satisfy its burden by merely pointing out that some
"metaphysical doubt" exists around the material facts. <u>Id.</u>
Rather, to defeat a summary judgment motion, the non-movant must
"set out specific facts showing a genuine issue for trial" in a
form that "would be admissible in evidence." Fed. R. Civ. P.
56(e). <u>See also</u> <u>Fireman's Ins. Co. v. DuFresne</u>, 676 F.2d 965,
969 (3d Cir. 1982); <u>Olympic Junior, Inc. v. David Crystal, Inc.</u>,
463 F.2d 1141, 1146 (3d Cir. 1972).

Issues of fact are only considered material if their
resolution potentially impacts the outcome of the suit under
governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986). "Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is
no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587.
When determining whether there is a factual dispute that requires

trial, the court must accept the evidence presented by the non-
movant as true and draw all justifiable inferences in the non-
movant's favor.  <u>Anderson</u>, 477 U.S. at 248-49.

    B.   <u>Triable Issue of Material Fact</u>

    The D&O Plaintiffs argue that the Liquidating Trustee has
failed to demonstrate the absence of any triable issue of
material fact.  The D&O Plaintiffs contend that many issues of
fact exist, including the following:

> A.   Whether [the D&O] Plaintiffs have viable claims under Paragraph 12 of the Settlement Agreement.
> B.   Whether the language of Paragraph 12 . . . created a common law trust under Delaware law.
> C.   Whether section 3545 of title 12 of the Delaware Code . . . is the determining authority to resolve whether Paragraph 12 . . . created a trust.
> D.   Whether [the D&O] Plaintiffs are members of the class of persons intended to be beneficiaries of the res established pursuant to Paragraph 12.
> E.   Whether Goldin is a fiduciary of the $750,000 res created under Paragraph 12 . . . and therefore owes fiduciary duties to [the D&O] Plaintiffs.

    All of the issues raised by the D&O Plaintiffs can only be
determined by interpreting the contractual language of the
Settlement Agreement.  Under Delaware law, issues of contract
interpretation are questions of law.  <u>See</u> <u>O'Brien v. Progressive
N. Ins. Co.</u>, 785 A.2d 281, 286 (Del. 2001).  Thus, there are no
issues of fact that must be determined before such interpretation
can be performed accurately and appropriately for the purposes of
the suit at hand.  Therefore, the Court concludes that no triable

issues of fact exist and that the only issues at hand are
questions of law.

    C.   <u>Contract Interpretation</u>

    Summary judgment is proper on issues of contract law when
the language of the disputed contract is "unambiguous and favors
the interpretation advanced by the movant." <u>Newport Assocs. Dev.
Co. v. Travelers Indemnity Co. of Ill.</u>, 162 F.3d 789, 791 (3d
Cir. 1998). <u>See also</u>, <u>Tamarind Resort Assocs. v. Virgin Islands</u>,
138 F.3d 107, 111 (3d Cir. 1998).  The court should not consider
the plain language of a contract to be ambiguous solely because
opposing parties disagree on its intended meaning. <u>See, e.g.</u>,
<u>Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 93
(3d Cir. 2001); <u>E.I. du Pont de Nemours & Co. v. Allstate Ins.
Co.</u>, 693 A.2d 1059, 1061 (Del. 1997).  Rather, ambiguity only
exists when the plain language of a contract may allow for more
than one reasonable interpretation. <u>Rhone-Poulenc Basic Chems.
Co. v. Am. Motorists Ins. Co.</u>, 616 A.2d 1192, 1196 (Del. 1992).

    A court must look to the plain language of a written
agreement as the starting point for any contractual
interpretation. <u>Quintus</u>, 353 B.R. 77, 82 (Bankr. D. Del. 2006);
<u>Citadel Holding Corp. v. Roven</u>, 603 A.2d 818, 822 (Del. 1992).
If a written contract is unambiguous on its face, the plain
language of the contract is the exclusive source used for

deriving a proper interpretation of the parties' intent.  Quintus
353 B.R. at 82; Citadel Holding Corp., 603 A.2d at 822.  "In
interpreting a contract, the Court should strive to avoid an
interpretation where any provision is rendered meaningless or
mere surplusage."  Quintus, 353 B.R. at 87 (citing Rag Am. Coal
Co. v. AEI Res., Inc., No. Civ. A. 16728, 1999 WL 1261376, at *5
(Del. Ch. Dec. 7, 1999)).

If the plain language of a contract is held to be ambiguous
in its terms, the court may consider testimony regarding
additional factors, such as prior agreements or communications,
that influence the appropriate interpretation of the contract.
See Quintus, 353 B.R. at 82 (citing Klair v. Reese, 531 A.2d 219,
223 (Del. 1987)).  See also James River-Pennington Inc. v. CRSS
Capital, Inc., No. 13870, 1995 WL 106554, at *5 (Del. Ch. March
6, 1995) (concluding that where contract is ambiguous, the court
is permitted to consider objective, extrinsic evidence of the
intent of the parties in drafting the operative language).

D.   Viability of Plaintiffs' Indemnification Claims

The D&O Plaintiffs claim that they are entitled to
indemnification by the Liquidating Trustee for certain attorneys'
fees and expenses incurred by them during the MDL that they were
required to repay to Genesis.  They rely on Paragraph 12 of the
Settlement Agreement, which provides in part:

> The Trustee, for the Liquidating Trust, and subject to the conditions contained in this Paragraph 12, shall indemnify and hold harmless each Director/Officer from and against any attorneys' fees and related costs and expenses associated with the defense costs only of any Proportionate Liability Claims and Defenses and any other indemnity claim, contribution claim, or other claims based on similar rights, laws or doctrines, to the extent that such indemnity claim, contribution claim, or other claims arise out of the claims asserted by the Trustee in the PwC Litigation and/or the DLJ Litigation (collectively, as limited herein, the "Indemnified Liability Claims").

(Ex. A-1 at ¶ 12.)

The Liquidating Trustee contends that the D&O Plaintiffs' claim fails to satisfy the plain language requirements for indemnification under the Settlement Agreement. Under Paragraph 12 of the Settlement Agreement, the Liquidating Trustee asserts that it is required to indemnify the D&O Plaintiffs only for any defense fees and expenses they incurred against Proportionate Liability Claims and Defenses or Indemnified Liability Claims. The Liquidating Trustee contends that it is required to repay only claims that arise out of the PwC and DLJ Litigation. Because the D&O Plaintiffs were never named parties in the PwC or DLJ Litigation, the Liquidating Trustee asserts that they have incurred no defense costs related to that Litigation and, therefore, have no viable indemnification claims.

The D&O Plaintiffs respond that, under the Settlement

Agreement, the term "Proportionate Liability Claims and Defenses" was intentionally defined to allow for broad application and was not restricted to the PwC or DLJ Litigation. Specifically, the D&O Plaintiffs argue that the term applies to any claims made against them by any party included in the MDL. Therefore, because the D&O Plaintiffs were named as defendants to some of the claims included in the MDL (namely the Securities Class Actions), they assert that they are entitled to indemnification for their defense fees and expenses resulting from those claims.

The Court disagrees with both parties' reading of the Settlement Agreement. The Settlement Agreement provided for mutual releases of the parties, subject only to the Liquidating Trustee's Indemnification Duty under Paragraph 12. To read Paragraph 12 as broadly as the D&O Plaintiffs do is to completely eviscerate the mutual releases.[5] However, contrary to the assertion of the Liquidating Trustee, the Indemnification Duty is not limited to claims related to the PwC or DLJ Litigation.

Paragraph 12 is quite specific and unambiguous. Under that

---

[5] Under the Settlement Agreement, the D&O Plaintiffs received broad releases of any claims that the Liquidation Trustee and Trust, the Debtors' bankruptcy estates, and any Holder of a Claim (anyone who had filed a proof of claim or was scheduled by the Debtors) might have against them. (Ex. A-1 at ¶¶ 4 & 7.) In return, the Liquidating Trustee received a release of claims the D&O Plaintiffs had against the estate, subject to certain tax and other indemnification claims and the Liquidating Trustee's Indemnification Duty in Paragraph 12. (Id. at ¶¶ 3, 12.)

provision, the extent of the Liquidating Trustee's
Indemnification Duty is specifically limited to defense costs
related to two types of claims: (1) any "Proportionate Liability
Claims and Defenses" and (2) "any other indemnity claim,
contribution claim, or other claims based on similar rights, laws
or doctrines, to the extent that such indemnity claim,
contribution claim, or other claims arise out of the claims
asserted by the Trustee in the PwC Litigation and/or the DLJ
Litigation."

      1.   <u>Proportionate Liability Claims and Defenses</u>

Proportionate Liability Claims and Defenses are defined in
Paragraph 7 of the Settlement Agreement as "the rights of PwC,
DLJ or any other person to assert that the actions of any of the
[D&O Plaintiffs] provides a defense to or reduces the amount of
any judgment against PwC, DLJ or any Holder of Claims under
contributory, comparative, proportionate or relative causation,
fault or liability defense, or similar rights, laws or
doctrines."  (Ex. A-1 at ¶ 12.)  Thus, Proportionate Liability
Claims and Defenses are not just claims made by PwC or DLJ but
include claims by "any other person."

However, those claims are not any claims but are limited to
certain types of claims: claims for "contributory, comparative,
proportionate or relative causation, fault or liability defense,

or similar rights, laws or doctrines." In addition, they are
indemnifiable only if they "provide[] a defense to or reduce[]
the amount of any judgment against . . . any Holder of Claims."
(Ex. A-1 at ¶ 12.) "Holder of Claims" is defined to mean someone
who filed a claim against the bankruptcy estate or who was
scheduled by the Debtors as a creditor or shareholder. (Ex. A-1
at ¶ E.)

The D&O Plaintiffs seek reimbursement of defense costs
related to the Securities Class Actions filed against them in the
MDL. The D&O Plaintiffs have presented no evidence that the
claims for which they seek reimbursement are Proportionate
Liability Claims and Defenses. In fact, the claims against the
D&O Plaintiffs in the MDL were direct claims against them by the
Securities Class Action Plaintiffs. They were not claims for
"contributory, comparative, proportionate or relative causation,
fault or liability defense, or similar rights, laws or
doctrines." Furthermore, they were not claims that otherwise
would provide a defense to those claimants against an action by
the Liquidating Trustee. There is no evidence that the
Liquidating Trustee had a claim or filed any action against any
of the MDL Securities Class Actions Plaintiffs.

As noted above, the Liquidating Trustee only sued PwC, DLJ,
the Insurance Carriers, and the D&O Plaintiffs themselves. Under

14

the Settlement Agreement, the Liquidating Trustee released the
Insurance Carriers and they, in turn, released the D&O Plaintiffs
from all subrogation claims.  Thus, the claim that Genesis made
against the D&O Plaintiffs in the April 2005 suit is not the type
of claim included within the definition of Proportionate
Liability Claims and Defenses (i.e., a claim for "contributory,
comparative, proportionate or relative causation, fault or
liability defense, or similar rights, laws or doctrines").
Further, there is no evidence that that claim would provide a
defense to Genesis against an action by the Liquidating Trustee
because the Liquidating Trustee had already released the
Insurance Carriers under the Settlement Agreement.  Finally,
there is no evidence that Genesis fits the definition of the
"Holder of a Claim."  In fact, Genesis waived all claims it may
have against the Debtors' bankruptcy estates under the Settlement
Agreement.

Thus, the Court concludes that the claims for which the D&O
Plaintiffs seek reimbursement are not Proportionate Liability
Claims and Defenses as defined in Paragraph 7 of the Settlement
Agreement.

2.   Indemnified Liability Claims

The other claims for which the Liquidating Trustee has the
duty to indemnify the D&O Plaintiffs are Indemnified Liability

Claims which are defined in Paragraph 12 to be "any other indemnity claim, contribution claim, or other claims based on similar rights, laws or doctrines, to the extent that such indemnity claim, contribution claim, or other claims arise out of the claims asserted by the Trustee in the PwC Litigation and/or the DLJ Litigation."  (Ex. A-1 at ¶ 12.)

Once again the D&O Plaintiffs assert that this clause is broad enough to encompass their claims.  The Liquidating Trustee contends, however, that Indemnified Liability Claims are limited to claims that arise out of the claims asserted by the Trustee in the PWC or DLJ Litigation.  The Court agrees with the Liquidating Trustee that the final clause defining those claims states that they are only claims "to the extent" they "arise out of the claims asserted by the Trustee in the PwC Litigation and/or the DLJ Litigation."

In this case, the D&O Plaintiffs provide no evidence that their claims arose out of either the PwC or DLJ Litigation.  In fact, the D&O Plaintiffs were never named as defendants in the PwC or the DLJ Litigation[6] and the Liquidating Trustee's

---

[6]    The Liquidating Trustee also relies on clause (aa) of Paragraph 12 to argue that it is not required to indemnify any Indemnified Liability Claims unless the D&O Plaintiffs are actually named as defendants in the PwC and DLJ Litigation.  The D&O Plaintiffs argue, however, that according to the actual language of clause (aa), it does not apply to Indemnified Liability Claims but only applies to Indemnified Claims, which

settlements with both PwC and DLJ provide that any claims by PwC
or DLJ against the D&O Plaintiffs are waived.

The D&O Plaintiffs argue, nonetheless, that Indemnified
Liability Claims extends to the MDL claims because the PwC
litigation was transferred to the MDL.  However, the Liquidating
Trustee correctly notes that the D&O Plaintiffs were not named as
defendants in the PwC suit and, therefore, could have incurred no
expenses in defense of that suit.  Nor did PwC ever make any
claims against any of the D&O Plaintiffs.

The transfer of an action to MDL does not substantively
consolidate that action with the other actions in the MDL.  See
28 U.S.C. § 1407(a) (stating that where "common questions of fact
are pending in different districts, such actions may be
transferred to any district for coordinated or consolidated
pretrial proceedings. . . .  Each action so transferred shall be
remanded by the panel at or before the conclusion of such
pretrial proceedings to the district from which it was
transferred . . . .").  Therefore, the fact that the PwC

---

though not defined must be different from Indemnified Liability
Claims.  (Ex. A-1 at ¶ 12.)  Thus, the D&O Plaintiffs assert that
the Settlement Agreement is ambiguous and extraneous evidence is
necessary.  Because the Court concludes that the claims for which
the D&O Plaintiffs seek reimbursement do not fall within the
definition of either Proportionate Liability Claims and Defenses
or Indemnified Liability Claims, without consideration of the
exception in clause (aa), it is not necessary to address this
issue.

Litigation was transferred to the MDL where the Securities Class Actions were pending does not mean that PwC asserted a claim against the D&O Plaintiffs or that actions taken by the D&O Plaintiffs in the MDL were "defense costs" associated with the PwC Litigation.

The language of Paragraph 12 also does not support the D&O Plaintiffs' interpretation that the Indemnified Liability Claims cover fees or expenses for <u>any</u> claims made against the D&O Plaintiffs in the MDL.  Although the MDL was pending at the time the Settlement Agreement was executed, the MDL is not mentioned anywhere in the language of the Agreement.  Specifically, the definition of Indemnified Liability Claims does not include any claim that may be made against the D&O Plaintiffs in the pending MDL (while it does expressly reference claims that may relate to the pending PwC and DLJ Litigation).  Nor, as found above, do the claims of the Securities Class Actions in the MDL for which the D&O Plaintiffs seek indemnification fit the types of claims ("any other indemnity claim, contribution claim, or other claims based on similar rights, laws or doctrines") that the Liquidating Trustee agreed to indemnify under the Settlement Agreement.

Therefore, the Court concludes that the D&O Plaintiffs' claim for indemnification is not a viable indemnification claim under the express language of the Settlement Agreement.

18

Consequently, the Court will grant summary judgment in favor of the Liquidating Trustee.[7]


IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court will grant the Liquidating Trustee's motion for summary judgment against the D&O Plaintiffs.

An appropriate order is attached.


Dated: August 27, 2010          BY THE COURT:

                                Mary F. Walrath
                                United States Bankruptcy Judge


---

[7]     The parties also disagree as to whether the Settlement Agreement created a trust in funds reserved for any of the D&O Plaintiffs' indemnification claims.  If Paragraph 12 created a trust, the D&O Plaintiffs would have secured claims; if no trust was created, the D&O Plaintiffs' claims would be unsecured claims.  Because the Court finds that the D&O Plaintiffs do not have viable indemnification claims at all, it is unnecessary to address whether they are secured or unsecured claims.
     In its prayer for relief, the Liquidating Trustee also requested attorneys' fees and court costs incurred in defending this action.  The Court will deny that request.  <u>See, e.g.</u>, <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 247 (1975) (stating that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.")